IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

THE CITY OF STARKVILLE, MISSISSIPPI                                        PLAINTIFF

v.                                                        CIVIL ACTION NO. 1:24-CV-15-SA-DAS

J&P CONSTRUCTION CO., INC., EVOQUA
WATER TECHNOLOGIES LLC, VOLKERT, INC.,
AND ENVIRONMENTAL TECHNICAL SALES, INC.                      DEFENDANTS

ORDER AND MEMORANDUM OPINION

The City of Starkville, Mississippi ("the City") initiated this civil action by filing its
Complaint in the Circuit Court of Oktibbeha County, Mississippi on December 22, 2023. The
Defendants removed the case to this Court on January 24, 2024, premising jurisdiction on diversity
of citizenship. *See* [1]. The City filed its Amended Complaint [61] on June 25, 2024. Now before
the Court are Environmental Technical Sales, Inc. ("ETEC") and Evoqua Water Technologies
LLC's Motions to Dismiss for Failure to State a Claim [68, 72]. The Motions [68, 72] have been
fully briefed and are ripe for review. The Court is prepared to rule.

*Relevant Factual and Procedural Background*

According to the Amended Complaint [61], on April 4, 2019, the City and Volkert, Inc.
executed a "Task Order," which was part of a contract for improvements to the aeration system in
the oxidation ditches of the City's wastewater treatment plant. Pursuant to the Task Order, Volkert
was to design the project and provide construction phase services for the project. After public bid,
the City awarded J & P Construction Co. the construction contract for the project that Volkert
designed.

As part of the project, Volkert designed six disc aerators to be installed in the oxidation
ditches. The Amended Complaint [61] alleges that Evoqua supplied the disc aerators and that
ETEC was Evoqua's agent and representative. More specifically, it appears that ETEC was

Evoqua's sales representative, though ETEC's role and obligations are not entirely clear on the face of the Amended Complaint [61], as will be discussed below. The Amended Complaint [61] further alleges that Evoqua provided a written material and workmanship warranty on the disc aerators.

The City's sole claim against ETEC is negligence. The City brings negligence, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose claims against Evoqua. In their Motions [68, 72], both parties contend that the City's negligence claims are barred by the economic loss doctrine. In its Motion [68], ETEC further asserts that the City fails to state a negligence claim against it because the City has not established that ETEC owed the City a duty. In its Motion [72], Evoqua argues that the City's implied warranty claims fail because Evoqua expressly disclaimed any implied warranties. The City opposes the Motions [68, 72].

*Legal Standard*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 157 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).

2

While the court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, the court need not accept "legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023) (quoting *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019)). In deciding a Rule 12(b)(6) motion, a court is generally limited to the contents of the pleadings, including attachments thereto. *See Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 634 (5th Cir. 2014) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). However, "[t]he court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Id.*

### Analysis and Discussion

The Court will begin with the arguments pertaining to the negligence claims before turning to Evoqua's arguments regarding the implied warranty claims.

At the outset, the Court notes that Mississippi law applies to this diversity action. *See, e.g.*, *Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019) (citing *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)) ("The *Erie* line of authorities holds that substantive state law must be applied in federal courts in diversity cases[.]").

### I.     ETEC's Motion to Dismiss [68]

The standard elements of a negligence claim are duty, breach, proximate causation, and damages. *See Hardin v. Town of Leakesville*, 345 So. 3d 557, 565 (Miss. 2022) (citing *Simpson v. Boyd*, 880 So. 2d 1047, 1050 (Miss. 2004)). ETEC argues that the Amended Complaint [61] fails to establish that ETEC owed it a duty. First, according to ETEC, "the City alleges co-defendant Volkert was *contracted* to design the project, which included the disc aerators; co-defendant J&P

was *contracted* to construct the project, which included installing the disc aerators; and co-defendant Evoqua manufactured and supplied the disc aerators with *warranties*. The City, however, did not allege facts demonstrating [ETEC] owed the City a duty." [69] at p. 3 (emphasis in original). ETEC points out that the Task Order with Volkert, the contract with J & P, and the quote from Evoqua are attached to the Amended Complaint [61], but no attachment demonstrates a connection between ETEC and the City. Thus, per ETEC, it owed the City no duty.[1]

Second, ETEC correctly asserts that "an authorized agent for a disclosed principal cannot be liable for the acts of the agent's corporate principal. To be liable, the agent must commit 'individual wrongdoing.' In other words, the agent incurs no personal liability absent fraud or equivalent misconduct." *Shannon v. Miss. Coast Urology, PLLC*, 2013 WL 6859173, at *3 (S.D. Miss. Dec. 20, 2013) (quoting *Turner v. Wilson*, 620 So. 2d 545, 548 (Miss. 1993)) (additional citations omitted). As such, ETEC argues that even assuming Evoqua acted negligently, ETEC cannot be held liable as its agent. ETEC further argues that it cannot be held liable for individual wrongdoing, as the Amended Complaint [61] fails to allege any wrongdoing attributable to ETEC.

This brings the Court to the relevant portions of the Amended Complaint [61]. First, under "Factual Allegations," the City alleges:

> 12. Evoqua supplied the disc aerators for the Project and assisted J & P in installing the disc aerators. Evoqua provided a written material and workmanship warranty to J & P. . .

---

[1] In support of its argument that it owed the City no duty, ETEC attaches the Sales Representative Agreement ("SRA") between itself and Evoqua, which allegedly demonstrates that ETEC had no authority or responsibility to manufacture, design, or install the aerators. *See* [68], Ex. 1. As discussed below, the Amended Complaint [61] does not describe the nature of the agent-principal relationship between ETEC and Evoqua. Thus, the Court finds that the SRA is not sufficiently referenced in or relied upon in the Amended Complaint [61] and the Court therefore declines to consider its content in deciding the present Motion [68]. *See Brand Coupon Network, L.L.C.*, 748 F.3d at 634 (documents attached to motion to dismiss may be considered when referenced and relied upon in the complaint). The Court simply notes its inclusion with the Motion [68] for the sake of completeness.

13. Evoqua warranted the disc aerator equipment and the equipment components that it was to provide for the Project through the earlier of eighteen months from delivery or twelve months from initial operation.

14. Evoqua warranted any related services performed for the Project for 90 days after performance.

15. ETEC was Evoqua's agent and representative in all regards in relation to the Project.

16. Defendants began installing the disc aerators in July 2020, and immediately after the disc aerators were installed, they began failing.

. . .

19. While the Defendants have attempted multiple repairs and replacements, all attempts have failed, and the disc aerator system has never consistently worked as promised or as intended.

20. The City, on multiple occasions, gave the defendants notice of the issues and the opportunity to cure, but the defendants could not or would not correct the issues.

. . .

22. . . . The City hired Volkert to design the system, J & P to construct the system, and ETEC and Evoqua to supply the system. One of more of those parties is responsible for the City's damages and the City, therefore, pleads the following causes of action separately or in the alternative of each other.

[61] at p. 3-4.

The City then asserts the following negligence claim:

<u>Count Four – Negligence – ETEC and Evoqua</u>

34. The City incorporates and realleges the preceding paragraphs herein.

35. ETEC acted as an agent and a representative of Evoqua and at all relevant times and [sic] acted within the scope, purpose and authority of that agency and with the full knowledge, permission and consent of Evoqua.

36. ETEC owed a duty of reasonable care to the City to perform or assist in the installation, repair, and replacement of the disc aerators.

37. ETEC did not properly perform or assist in the installation, repair, and replacement of the disc aerators.

38. ETEC's negligence proximately caused damages to the City as described above in an amount to be proven at the trial of this cause.

39. As ETEC's principal at all relevant times as described above, Evoqua is liable for ETEC's negligence.

*Id.* at p. 6.

It is apparent that the negligence claim is based on a theory that ETEC owed the City a duty to install and repair the aerators. However, the Court agrees that the factual basis for this duty is not clear. The first factual allegation specific to ETEC is that ETEC was Evoqua's agent and representative. The Amended Complaint [61] provides no information on the agent-principal relationship between ETEC and Evoqua and thus does not suggest that ETEC was to provide services of any kind on Evoqua's behalf. ETEC's brief indicates that ETEC functioned as a sales representative, but the Amended Complaint [61] consistently refers to Evoqua as the seller of the aerators. *See, e.g.*, [61] at p. 8 ("*Evoqua* sold the subject disc aerators to J & P.") (emphasis added).[2] In other words, the nature of ETEC's role as Evoqua's agent—and whether that role included obligations to install and repair the disc aerators—is not apparent on the face of the Amended Complaint [61].

The second factual allegation specific to ETEC is that "the City hired. . . ETEC and Evoqua to supply the system." [61] at p. 4. Again, it is not clear that the agreement to supply the system would have included an obligation on ETEC's part to install and repair the aerators. This is

---

[2] The Court acknowledges that the Quotation attached to the Amended Complaint [61] lists ETEC as Evoqua's sales representative. *See* [61], Ex. 4 at p. 1. However, the document includes no information regarding the duties ETEC allegedly had as Evoqua's sales representative.

especially true in light of the allegation that "*Evoqua* supplied the disc aerators for the Project and *assisted J & P in installing [them]*," as well as the allegations that the City communicated with Evoqua regarding repairs. [61] at p. 3 (emphasis added). The City's collective references to the "Defendants" when describing the installation and repair process further confuses the issue of which party negligently performed the installation and repairs. To summarize, the Amended Complaint's [61] two factual allegations specific to ETEC do not allow the Court to plausibly infer that ETEC had a duty to install and repair the aerators.

This brings the Court to the allegations under Count Four. As noted, to hold ETEC separately liable for negligence, the City must allege that ETEC engaged in its own wrongdoing— ETEC cannot be held liable for Evoqua's alleged negligence based purely on its status as Evoqua's agent. *Shannon*, 2013 WL 6859173 at *3 (explaining that an "agent incurs no personal liability absent fraud or equivalent misconduct"). However, the City apparently does not seek to hold ETEC liable for its own wrongdoing. Under Count Four, the Amended Complaint [61] alleges that ETEC failed to properly install and repair the disc aerators and that Evoqua is liable as its principal. This conflicts with the factual allegation that Evoqua was the party assisting J & P with installation.

Overall, while the Amended Complaint [61] states under Count Four that ETEC breached its duty to install and repair the aerators, this is a conclusory allegation that is not linked to any preceding factual allegations. As noted, the Amended Complaint [61] contains no factual allegations demonstrating that ETEC owed the City a duty to install and repair the aerators *or* that ETEC was involved in the installation and repair process. Instead, the Amended Complaint [61] alleges that Evoqua was involved in the installation and repair process, then contradictorily asserts that Evoqua is liable for ETEC's negligent installation.

The Court finds that the vague and inconsistent nature of the Amended Complaint [61] fails to provide ETEC adequate notice of the claim against it. "When a claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim, 'district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies. . . unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.'" *Williams v. 1960 Fam. Prac. PA*, 2020 WL 4227592, at *3 (S.D. Tex. June 29, 2020), *report and recommendation adopted*, 2020 WL 4227531 (S.D. Tex. July 21, 2020) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F. 3d 305, 329 (5th Cir. 2002)). Therefore, the Court will allow the City to file a second amended complaint setting forth its claim with adequate specificity. *See Ricklin-Voronstova v. Crider*, 2023 WL 10147453, at *1 (S.D. Miss. July 13, 2023) ("'court can *sua sponte* order a plaintiff to submit a more definite statement' when allegations are 'confusing, somewhat contradictory, and sufficiently unclear'") (quoting *Momenian v. Davidson*, 878 F.3d 381, 391 (D.C. Cir. 2017)); *see also Beanal v. Freeport McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (approving district court's *sua sponte* allowance of amendment under Rule 12(e) where plaintiff failed to plead with sufficient clarity); *Scharklet v. Case Healthcare Solutions, Inc.*, 2023 WL 8259255, at *10 (N.D Miss. Nov. 29, 2023) (emphasizing that motions to dismiss are disfavored and allowing plaintiff to file second amended complaint where it appeared he could state a plausible claim).

The City is ordered to file a second amended complaint clearly setting forth the basis of ETEC's alleged liability. If ETEC had a duty to repair and install the disc aerators, the basis for that duty must be clear on the face of the complaint. If the City intends to hold ETEC liable for its own acts *or* if the City attempts to hold Evoqua liable for ETEC's acts, the theory of liability must be apparent on the face of the complaint.

## II.    Economic Loss Doctrine

Next, ETEC and Evoqua argue that the economic loss doctrine bars the negligence claim asserted against each of them. The economic loss doctrine bars recovery in strict liability and negligence where "the only damage sustained [is] to the product itself." *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 736 So. 2d 384, 387 (Miss. Ct. App. 1999) (citing *East Miss. Electric Power Assoc. v. Porcelain Prods. Co.*, 729 F. Supp. 512, 514 (S.D. Miss. 1990)). For example, in *State Farm*, a car buyer and his insurer sued the manufacturer of his car after it was destroyed by fire due to a defective part. *Id.* The Mississippi Court of Appeals found that the doctrine barred the plaintiffs' strict liability and negligence claims because the plaintiffs "suffered only economic loss to the car itself" and no "other property." *Id.* at 388. In applying the doctrine, the court noted that "[c]ontract law and the law of warranty are well suited to handle controversies in which commercial purchases do not live up to the expectations of the consumer." *Id.* at 387.

Here, with respect to damages, the Amended Complaint [61] alleges as follows:

> 21. As a result, the City has expended thousands of dollars in additional operating costs and has received notices of violations from the Mississippi Department of Environmental Quality due to the failure of the disc aerators.

> 22. The City will also incur damages in the future which will more than likely include a complete replacement of the entire system that was installed during the Project. . .

[61] at p. 4.

Crucially, it is not clear if the "entire system that was installed during the project" is limited to the disc aerators or if the "entire system" includes other components. *See, e.g., Shular Contracting, Inc. v. Bayou Concrete, LLC, 2010 WL 2802158*, at *3 (S.D. Miss. July 14, 2010) (declining to apply economic loss doctrine where damages extended beyond defective concrete itself to rebar, plumbing, and electrical components). This prevents the Court from determining

whether the City alleges that "other property" sustained damages. *State Farm*, 736 So. 2d at 388. Like above, due to the vague nature of the damages allegations, the Court will allow the City to file a second amended complaint to set forth the allegations with more specificity. *See Ricklin-Voronstova*, 2023 WL 10147453 at *1.

III.     *Evoqua's Motion to Dismiss [72]*

Lastly, Evoqua argues that the City's claims for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose should be dismissed due to the disclaimer contained in Evoqua's Standard Terms of Sale attached to the Quotation provided to J & P. *See* [61], Ex. 4. Pursuant to the Mississippi Uniform Commercial Code, both implied warranties may be modified or excluded in a contract for goods between merchants:

> (2) To exclude or modify the implied warranty of merchantability or any part of it in a contract between merchants the language must mention merchantability and in case of a record must be conspicuous. To exclude or modify the implied warranty of fitness in a contract between merchants, the exclusion must be in a record and be conspicuous and the language is sufficient if it states, for example, that "There are no warranties that extend beyond the description on the face hereof."

M ISS. C ODE A NN. § 75-2-316(2).

The relevant provision of the Quotation at issue provides as follows:

> 7. **Warranty.** Subject to the following sentence, Seller warrants to Buyer that the (i) Work shall materially conform to the description in Seller's Documentation and shall be free from defects in material and workmanship and (ii) the Services shall be performed in a timely and workmanlike manner. . . THE WARRANTIES SET FORTH IN THIS SECTION 7 ARE THE SELLER'S SOLE AND EXCLUSIVE WARRANTIES AND ARE SUBJECT TO THE LIMITATION OF LIABILITY PROVISION BELOW. SELLER MAKES NO OTHER WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY

> WARRANTY OF MERCHANTABILITY OR FITNESS FOR
> PURPOSE.

*Id.* at p. 12-13 (emphasis in original).

It is unclear on the face of the Amended Complaint [61] that the Quotation represents a true and correct copy of the agreement J&P and Evoqua ultimately entered. First, the Quotation is not signed by J&P or Evoqua. Second and most importantly, the City's allegations are inconsistent. On one hand, the City relies on the Quotation in asserting its breach of express warranty claim, suggesting that the Quotation represents J&P and Evoqua's agreement. On the other hand, the Amended Complaint [61] specifically alleges that the attached contracts with Volkert and J&P represent true and correct copies of those contracts (one of which is unsigned, and one of which is a partial contract), but it does *not* allege the same with respect to the unsigned Quotation. Furthermore, the City consistently refers to the document as a "Quotation," which implies that the document was an estimate, though the Amended Complaint [61] does not allege that the attached Quotation was the estimate that J&P accepted. Moreover, in response to Evoqua's argument regarding the disclaimer, the City contends that it is entitled to discovery regarding "those parties' negotiations and the full extent and terms of any contract between them." [78] at p. 3. Again, this argument is perplexing because the breach of express warranty claim relies upon the Quotation as a representation of the final contract between J&P and Evoqua, yet the City seems to argue that it is unsure of the terms of the final contract.

The inconsistent nature of these allegations prevents the Court from determining whether the implied warranty claims are barred by the disclaimer as a matter of law. Like above, the Court will allow the City to file a second amended complaint to set forth the allegations with sufficient clarity. *See Ricklin-Voronstova*, 2023 WL 10147453 at *1.

*Conclusion*

For the reasons set forth above, ETEC and Evoqua's Motions to Dismiss [68, 72] are DENIED *without prejudice*. If appropriate, ETEC and Evoqua may re-urge their arguments after the City files a second amended complaint.

The City is hereby ORDERED to file second amended complaint within fourteen (14) days of the date of this Order.

SO ORDERED, this the 25th day of October, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE