IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

THE CITY OF STARKVILLE, MISSISSIPPI                                     PLAINTIFF

v.                                                CIVIL ACTION NO. 1:24-CV-15-SA-DAS

J&P CONSTRUCTION CO., INC., EVOQUA
WATER TECHNOLOGIES LLC, VOLKERT, INC.,
AND ENVIRONMENTAL TECHNICAL SALES, INC.                        DEFENDANTS

ORDER AND MEMORANDUM OPINION

The City of Starkville, Mississippi ("the City") initiated this civil action by filing its Complaint in the Circuit Court of Oktibbeha County, Mississippi on December 22, 2023. The Defendants removed the case to this Court on January 24, 2024, premising federal jurisdiction on diversity of citizenship. *See* [1]. The City filed its Second Amended Complaint [98] ("the Complaint") on November 8, 2024. Now before the Court is Evoqua Water Technologies LLC's Second Motion to Dismiss for Failure to State a Claim [101].[1] The Motion [101] has been fully briefed and is ripe for review. The Court is prepared to rule.

*Relevant Factual and Procedural Background*

According to the Complaint [98], the City entered into a contract with Volkert, Inc. to perform design, construction, and engineering services related to improving the City's wastewater treatment facility. The City and Volkert subsequently executed Task Orders 03-2018 and 04-2019, the latter of which specifically related to upgrading the oxidation ditches at the facility.

After public bid, the City awarded J & P Construction Co. the construction contract for the project that Volkert designed. Pursuant to a contract with J & P, Evoqua furnished the disc aerator

---

[1] Evoqua and Environmental Technical Sales, Inc. previously filed Motions to Dismiss for Failure to State a Claim [68, 72]. While recognizing certain deficiencies in the First Amended Complaint [61], the Court denied the Motions [68, 72] *without prejudice* and ordered the City to file a second amended complaint. *See* [92]. The City has now done so, and Evoqua has renewed its Motion [101].

assemblies to be installed in the oxidation ditches. Evoqua allegedly provided a representative to instruct and assist J & P in installing the equipment.

The Complaint [98] alleges that the disc aerator assemblies have repeatedly failed since their installation in July 2020. The City brings negligence, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose claims against Evoqua.

In its Motion [101], Evoqua contends that the City's negligence claim is barred by the economic loss doctrine. Evoqua does not challenge the breach of express warranty claim but argues that the City's implied warranty claims fail because Evoqua expressly disclaimed any implied warranties in its contract with J & P. The City opposes the Motion [101].

*Legal Standard*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 157 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).

While the court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, the court need not accept "legal conclusions, conclusory statements, or

naked assertions devoid of further factual enhancement." *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023) (quoting *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019)). In deciding a Rule 12(b)(6) motion, a court is generally limited to the contents of the pleadings, including attachments thereto. *See Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 634 (5th Cir. 2014) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). However, "[t]he court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Id.*

*Analysis and Discussion*

The Court will begin with the arguments pertaining to the negligence claim before turning to Evoqua's arguments regarding the implied warranty claims.

At the outset, the Court notes that Mississippi law applies to this diversity action. *See*, *e.g.*, *Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019) (citing *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)) ("The *Erie* line of authorities holds that substantive state law must be applied in federal courts in diversity cases[.]").

I.  Negligence Claim

Under Mississippi law, to prevail on a negligence claim, the plaintiff must establish the elements of duty, breach, causation, and injury. *See Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017) (citations omitted). The Complaint [98] alleges that Evoqua caused damages to the City by failing to use reasonable care when providing design information for the disc aerators, providing submittals and shop drawings for the pieces of equipment that comprised the disc aerators, and providing oversight during construction and assistance to the City in troubleshooting problems after installation.

Evoqua argues that the City's negligence claim is barred by the economic loss doctrine. The economic loss doctrine, applicable in products liability cases, bars recovery in strict liability and negligence where "the only damage sustained [is] to the product itself." *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 736 So. 2d 384, 387 (Miss. Ct. App. 1999) (citing *East Miss. Electric Power Assoc. v. Porcelain Prods. Co.*, 729 F. Supp. 512, 514 (S.D. Miss. 1990)). For example, in *State Farm*, a car buyer and his insurer sued the manufacturer of his car after it was destroyed by fire due to a defective oil seal. *Id.* The plaintiff argued that his tort claim was not barred by the economic loss doctrine because the defective oil seal caused damage to "other property" by destroying the remainder of the car. *Id.* at 388. The court was "unconvinced by any type of characterization of the remainder of the car as 'other property.' An oil seal is an integral component part of a car. 'Component parts are not "other property."'" *Id.* (quoting *Va. Transformer Corp. v. P.D. George Co.*, 932 F. Supp. 156, 162 (W.D. Va. 1996) in turn citing *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 867, 106 S. Ct. 2295, 90 L. Ed. 2d 865). The Mississippi Court of Appeals therefore held that the doctrine barred the plaintiffs' strict liability and negligence claims because the plaintiffs "suffered only economic loss to the car itself" and no "other property." *Id.* However, the court emphasized that the plaintiff's "damage may be pursued under a breach of warranty theory of liability." *Id.* (quoting *East Miss.*, 729 F. Supp. at 514).

Here, the City first argues that other property was damaged by the faulty disc aerators. The Complaint [98] alleges that "some of the concrete near the Disc Aerator Assemblies was damaged as a result of the Defendants' conduct." [98] at p. 6. Evoqua asserts that the concrete around the disc aerators is part of the oxidation ditch structure in which the disc aerators were installed, as evidenced by its contract with J & P. *See* [98], Ex. 6 at p. 6-7 ("Evoqua proposes to furnish Envirex® Orbal disc aeration equipment as described herein for installation in two (2) existing

4

oxidation ditch structures. The structure will be of concrete construction as provided by others."). As such, per Evoqua, any alleged damage to the concrete oxidation structures is damage to component parts of an integrated structure—*not* damage to *other* property. The Court sees no need to resolve this issue because the City's second argument is dispositive.

The City additionally argues that the economic loss doctrine does not bar its negligence claim that stems from Evoqua's breach of its design duties rather than the fact that it furnished a defective product. In support of its argument, the City cites *Lyndon Prop. Ins. Co. v. Duke Levy and Assoc., LLC*, 475 F.3d 268, 273 (5th Cir. 2007) and *Prestress Servs. Ind. of TN, LLC v. W.G. Yates & Sons Const. Co.*, 280 F. Supp. 3d 908 (N.D. Miss. 2017) wherein the courts found that the economic loss doctrine did not bar negligence claims against engineering firms that allegedly breached their duty to properly design products for use in particular projects. In *Lyndon Property*, the Fifth Circuit emphasized that the defendant engineering firm "point[ed] to no Mississippi caselaw applying [the] doctrine outside of the realm of products liability." 475 F.3d at 274. The court therefore declined to apply the economic loss doctrine in what it described as "a tort case involving a duty shaped by contract." *Id.* (citations omitted).

Evoqua responds that it was an equipment supplier that was not contracted by any party to provide engineering or design services. In support of its position, Evoqua points to its contract with J & P, which provides that "[Evoqua] proposes *to furnish* the equipment specified in this Quotation[.]" [98], Ex. 6 at p. 5. The first line of the purchase order additionally states that "[a]ny material or labor furnished under this agreement is to fully comply with the engineer's plans and specifications prepared for this project and is purchased subject to the final approval of the engineer. . . Appropriate shop drawings and/or data sheets, are to be submitted to the contractor by

5

the seller. Said drawings are to be approved by both the engineer and contractor prior to commencing." *Id.* at p. 1.

Again, the City contends that the Complaint [98] adequately alleges that Evoqua designed the disc aerators:

> 9. The City and Volkert subsequently entered into Task Order 04-2019 for professional engineering design and construction phase services for the upgrades to two oxidation ditches at [the facility].
>
> 10. Volkert developed the plans and specifications for the Project, which, among other things, called for providing labor, material, and equipment to demolish the existing brush aertors in the two existing oxidation ditches at the Plant, and furnish and install a new disc aerator system, including six new disc aerator assemblies. . .
>
> 11. Upon information and belief, Evoqua assisted Volkert in the design process by providing Volkert with design and product information, which became the basis of Volkert's design.
>
> . . .
>
> 13. Pursuant to a contract with J & P, Evoqua agreed to furnish the Disc Aerator Assemblies as described in the plans and specifications for the Project that Volkert prepared. . .
>
> . . .
>
> 15. Evoqua designed the Disc Aerator Assemblies based on the conditions at the Plant.
>
> 16. Evoqua submitted shop drawing for the Equipment to J & P for approval by J & P and Volkert.
>
> 17. Some of the shop drawings did not comply with the requirements of the Project's plans and specifications.
>
> 18. Volkert and J & P approved Evoqua's shop drawings despite their noncompliance.

[98] at p. 3-4.

Based on the language of the Complaint [98], though Volkert was charged with final design approval, it appears that Evoqua, as the manufacturer of the equipment, was responsible for preparing drawings and providing information that was eventually incorporated into "Volkert's design." *Id.* at p. 3 (emphasis added). The disc aerator specifications (Section 11950 of the City's contract with Volkert) also provide that work was to be performed according to the manufacturer's drawings and installation manual. *See* [98], Ex. 4 at p. 7.

In addition to what appears to be a contractual duty to prepare drawings as part of the design process, Evoqua had duties related to installation. The Evoqua contract provides that "Evoqua's pricing includes the services of a factory field service technician for checking the installed equipment and instruction of Owner's personal; all of which shall be performed over a total of: Two (2) trips with four (4) days on site." [98], Ex. 6 at p. 5. The Complaint [98] alleges that "Evoqua provided a representative to instruct and provide assistance to J & P in installing the Equipment. Even with Evoqua's supervision, J & P did not properly install some or all of the Equipment. . . Evoqua visited the site numerous times throughout the Project to analyze, assess, and assist in repairing or replacing the failed Disc Aerator Assemblies, or various parts thereof. . . While the Defendants have attempted multiple repairs and replacements, all attempts have failed, and the disc aerator system has never consistently worked as promised or intended." *Id.* at p. 4-5 (internal paragraph numbers omitted).

Like in *Lyndon*, the City's negligence claim based on Evoqua's failure to use reasonable care when assisting in the design of the disc aerators and during installation is better characterized as "a tort [claim] involving a duty shaped by a contract." 475 F.3d at 274; *see also Steel Dynamics Columbus, LLC v. Altech Enviro. USA Corp.*, 273 F. Supp. 3d 627, 638 (N.D. Miss. 2017) ("[T]he tort duty founded on contract is breached not by failing to perform the contract obligation at all

7

but by causing damages due to the carelessness in the performance of the contract."). This is distinguishable from a negligence claim based on a defective product, which may be barred by the economic loss doctrine and better resolved under the City's warranty claim. *See State Farm*, 736 So. 2d at 387 ("Contract law and the law of warranty are well suited to handle controversies in which commercial purchases do not live up to expectations of the consumer.").

Evoqua's Motion to Dismiss [101] the City's negligence claim is therefore DENIED.

II.     *Breach of Implied Warranties Claims*

Evoqua additionally moves to dismiss the City's claims for breach of implied warranties of merchantability and fitness for a particular purpose. Evoqua contends that the following disclaimer in its contract with J & P precludes the implied warranty claims:

> 7. **Warranty.** Subject to the following sentence, Seller warrants to Buyer that the (i) Work shall materially conform to the description in Seller's Documentation and shall be free from defects in material and workmanship and (ii) the Services shall be performed in a timely and workmanlike manner. . . THE WARRANTIES SET FORTH IN THIS SECTION 7 ARE THE SELLER'S SOLE AND EXCLUSIVE WARRANTIES AND ARE SUBJECT TO THE LIMITATION OF LIABILITY PROVISION BELOW. SELLER MAKES NO OTHER WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR PURPOSE.

[98], Ex. 6 at p. 15-16 (emphasis in original).

Mississippi law, with limited exceptions, prohibits the disclaimer of liability as to any implied warranty of merchantability or fitness for a particular purpose in a sale to a "consumer" of "consumer goods," as those terms are defined by statute. MISS. CODE. ANN. § 11-7-18. However, the Mississippi Uniform Commercial Code ("UCC") allows for such a disclaimer in a contract between merchants, subject to certain parameters discussed below. *See* MISS. CODE. ANN. § 75-2-316(2).

8

In arguing that it expressly and conspicuously disclaimed the implied warranties, Evoqua relies on *Poindexter Park After-School Club v. Siemens Industry, Inc.*, 2020 WL 13526629 (S.D. Miss. June 2, 2020). In *Poindexter*, the City of Jackson entered into a contract with Siemens whereby Siemens was responsible for repairs to the City's water and sewer infrastructure, replacement of water meters, and implementation of an updated billing service. *Id.* at *1. After the new meter and billing system failed, the plaintiff-residents of Jackson sued Siemens for significant overcharges for water-sewage usage. *Id.*

Siemens moved to dismiss the plaintiffs' breach of implied warranties of merchantability and fitness for a particular purpose claims pursuant to the disclaimer in its contract with the City. *Id.* at *7. The plaintiffs argued that the disclaimer was invalid because Siemens' sale of water meters was a sale of consumer goods and, as noted above, Mississippi law generally prohibits the disclaimer of implied warranties in sales of "consumer goods" to "consumers." *Id.* (citing MISS. CODE. ANN. § 11-7-18). The court found that the sale of water meters to the City for use in measuring residential and commercial customers' water usage did not satisfy the Mississippi UCC's definition of "consumer goods" sold to "consumers." *Id.* (citing MISS. CODE. ANN. §§ 75-1-201(b)(11) and 75-9-102(23)).[2] The court therefore found that "Seimens was thus free to disclaim any implied warranties in its contract with the City; and since it explicitly did so, plaintiffs putative breach of implied warranty claims fail as a matter of law[.]" *Id.* Here, Evoqua argues that it was also free to disclaim the implied warranties because its contract with J & P did not involve consumer goods.

---

[2] For context, MISS. CODE ANN. § 75-1-201(11) defines "consumer" as "an individual who enters into a transaction primarily for personal, family, or household purposes." MISS. CODE ANN. 75-9-102(23) defines "consumer goods" as "goods that are used or bought for use primarily for personal, family, or household purposes."

9

The City responds that "the application of *Poindexter* should be limited to the *Poindexter* court's analysis of whether certain goods are 'consumer goods' under Mississippi law." [106] at p. 5. The City contends that *Poindexter* only acknowledges that this type of disclaimer is "not illegal" but does not validate every attempted disclaimer. *Id.* Citing the Mississippi UCC statutes on parol evidence, unconscionability, and the modification of warranty by words or conduct, the City argues that there may be instances where a disclaimer is invalid. The City contends that facts relevant to whether the disclaimer is valid may be in the hands of other parties, as alleged in the Complaint. *See* [98] at p. 4 ("Upon information and belief, the contract between J & P and Evoqua consists of the documents attached hereto as Exhibit '6' and any documents incorporated therein by reference. Because the City was not a party to [the agreement between J & P and Evoqua], the City does not know whether other terms were included in that contract or whether there were change orders thereto.").

The City's argument that the Court should allow the implied warranty claims because there could *possibly* be some unidentified reason to invalidate the disclaimer falls short of the Rule 12(b)(6) plausibility standard. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."). Moreover, the City additionally brings a breach of express warranty claim premised upon the validity of the contract and, more specifically, the warranty clause that contains the disclaimer. *See* [98] at p. 8-9 (alleging under breach of express warranty claim that "Evoqua sold the disc aerators to be installed at the Project with written warranties as to both materials and workmanship. See Exhibit '6.'"). The City cannot rely on the contract for one claim and challenge its validity in support of another claim. *See MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 135, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007)

10

(discussing "common-law rule that a party to a contract cannot at one and the same time challenge its validity and continue to reap its benefits") (citations omitted).

The Court agrees with Evoqua's reliance on the overarching holding in *Poindexter*. The contract was not a sale of consumer goods, and Evoqua was free to disclaim the implied warranties in accordance with Mississippi law. The Mississippi UCC provides that the implied warranties may be excluded in sales between merchants, with the following requirements as to the disclaimer:

> To exclude or modify the implied warranty of merchantability or any part of it in a contract between merchants the language must mention merchantability and in case of a record must be conspicuous. To exclude or modify the implied warranty of fitness in a contract between merchants, the exclusion must be in a record and be conspicuous and the language is sufficient if it states, for example, that "There are no warranties that extend beyond the description on the face hereof.

MISS. CODE. ANN. § 75-2-316(2).

In addition to its arguments above, the City contends that the disclaimer is invalid because J & P was not a merchant as required by MISS. CODE. ANN. § 75-2-316(2). The Mississippi UCC defines "merchant" as follows:

> (1) "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

MISS. CODE. ANN. § 75-2-104(1), (3).

Here, the disc aerator specifications provide that the contractor (J & P) was to disconnect and remove the existing aerators, perform all electrical work for removal and installation, and install the aerators according to Evoqua's mechanical requirements. *See* [98], Ex. 4 at p. 1, 7. J & P's contract with Evoqua provided that J & P, along with Volkert, was to approve Evoqua's

11

drawings. *See* [98], Ex. 6 at p. 1. Given the level of expertise and sophistication required to perform this very specific type of construction, J & P certainly qualified as a merchant who "by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." MISS. CODE. ANN. § 75-2-104(1); *see Peavy Electronics Corp v. Baan U.S.A., Inc.*, 10 S. 3d 945, 958 (Miss. Ct. App. 2009) (holding that an electronics corporation that entered into a contract to buy software was a "sophisticated merchant buyer with an experienced IT staff.").

The Court finds that the contract between J & P and Evoqua was between merchants. Therefore, Evoqua was permitted to disclaim the implied warranties in compliance with the requirements of MISS. CODE. ANN. § 75-2-316(2).

The City does not dispute that Evoqua's disclaimer is in writing and includes the statutorily required mention of the word "merchantability." [98], Ex. 6 at p. 16. However, the City "does not concede that the purported disclaimer was conspicuous." [106] at p. 4. The City cites no caselaw and makes no argument in support of its apparent conclusion that the disclaimer is not conspicuous. The disclaimer is contained within a section clearly labeled "Warranty" in bold typeface. [98], Ex. 6 at p. 15. Within that section, the disclaimer is in all capital letters. *See id.* at p. 15-16. This Court in *Steel Dynamics Columbus*, 273 F. Supp at 642, and the United States District Court for the Southern District of Mississippi in *Poindexter*, 2020 WL 13526629, at *8, found that the plaintiffs' implied warranty claims were by barred by a disclaimer with similar language in all capital letters. And notably, the "Clarifications/Exceptions" section of the contract, in bold typeface, states that "Evoqua's standard terms and conditions, including without limitations *Evoqua's warranty obligations in Article 7* govern the purchase and sale of equipment, products, and related services, referred to in Evoqua's proposal." [98], Ex. 6 at p. 11-12 (emphasis added).

The Court finds that the express and conspicuous disclaimer bars the City's implied warranty claims.

*Conclusion*

For the reasons set forth above, Evoqua's Motion to Dismiss for Failure to State a Claim [101] is GRANTED in part and DENIED in part. The City's breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose claims are DISMISSED *with prejudice*. The City may proceed with its negligence claim.

SO ORDERED, this the 2nd day of June, 2025.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE